We will hear argument first this term in Case 23-191, Williams v. Fitzgerald. Mr. Unikowski? Mr. Chief Justice, and may it please the Court, Patsy and Felder control this case. In Patsy, this Court held that a failure to exhaust was not a defense to liability under Section 1983. In this case, however, the Supreme Court of Alabama dismissed Petitioner's claims because Petitioner's failed to exhaust, contradicting Patsy's holding. Felder confirms that Patsy applies in state court. This Court reasoned that the dominant characteristic of a civil rights claim is that it's judicially enforceable in the first instance, and that characteristic does not vary depending on whether the suit is filed in federal or state court. The same reasoning applies to this case. Respondent characterizes Alabama's statute as a neutral procedural rule, but there's nothing neutral about it. A claimant has to seek relief from the Secretary before suing the Secretary. The Secretary never has to seek relief from the claimant for anything, and never has any reason to exhaust any revenue. Respondent also emphasizes that Alabama's law is jurisdictional. This Court has held that a state cannot avoid preemption by defining the jurisdiction of state courts to exclude cases, in which the defendant asserts an affirmative defense that this Court has held is not available, and that's exactly what happened in this case. Finally, and at a minimum, the Alabama statute is preempted as applied to this case, in which the Alabama Supreme Court reached the Kafkaesque conclusion that petitioners could not challenge their inability to exhaust precisely because of their inability to exhaust. I welcome the Court's questions. Mr. Unikowski, would you have the same objection if Alabama required these claims to be made in a lower state court? No, Your Honor. I think the state is allowed to direct these claims to a court, as long as there's no exhaustion requirement. Well, what's the difference if it's, let's say, and I'm just speculating, that it required that it goes to something the equivalent of a municipal court before it goes to its trial court. How is that different from going to an agency? Isn't it a similar exhaustion problem? I don't think so. When I think of an exhaustion requirement, I think of a requirement to seek relief from the very person you're planning to sue before suing that person. That's how Alabama's system works. You have to seek relief from the secretary. You file a claim with an examiner, who reports to the secretary. You appeal to an appeals tribunal, which also reports to the secretary, so you're seeking relief from the very entity that you're ultimately going to sue, and that's the defect the Court identified in the Felder case. I view that as different as the state setting up a judicial system to direct parties to a third-party neutral. What if instead of the requirement, your complaint, the exhaustion requirement, what if the requirement were simply that parties had to go through a mediation process? I think several jurisdictions have that. I mean, it may not last long, but before you can proceed with your suit, you have to sit down and there's a mediator that sees, tries to see if you can work it out. So I think that sounds a little bit like the rule in Felder, so I probably would say it's preempted, but I think that would boil down to whether it's really an exhaustion requirement. The rule I extract from Patsy is that exhaustion requirements are preempted. You know, I think there's some borderline cases about whether something really qualifies as an exhaustion requirement. I think that question's not presented here because it pretty clearly is a requirement of that nature. Well, I would have thought that your complaint is focusing on the sort of delay, which is what the exhaustion requirement simply imposes, and if simply you've got to try mediation for a while, I don't know why you would say that's also objectionable. Well, I think it would depend on exactly what the nuts and bolts of the requirements are. I mean, if you have to present some version of a notice of claim to the state agency and then go through a mediation process, I might say that looks like the notice of claim requirement in Wisconsin. If you can sue right away and then the court just sends the parties off to mediation while the claim is pending, that doesn't sound like an exhaustion requirement at all. It is judicially enforceable in the first instance, and then the court is just applying a particular procedure to try to encourage a settlement. So I think it would depend on how the mediation rule worked. Mr. Yanankowski, when did the state statute of limitations start running, or has it? So I think that's an unresolved question, whether it would be told or not. I think there is some risk that it wouldn't be told. The state might say that it expired before you got the chance to exhaust, because that would be the rule in federal court, but I don't think that the lower courts decided whether there would be tolling during the exhaustion process. Has it expired for federal purposes? If you're a plaintiff, if your clients were to file in federal court? No, I don't think. We're seeing forward-looking relief, injunctive relief, so we're seeing there's a continuing harm. So no, I think we could still file our lawsuit in federal court. And just out of curiosity, why didn't you file a lawsuit in federal court? Why did you go to state? I think we felt the state court was best positioned to enter an injunction against the state agency. If the state courts hear the overwhelming majority of unemployment insurance claims, we just felt the state court would be in the best position to enter and administer an injunction. So that's why we went to state court. I'm very confused by this system. First of all, I'm not sure what the exhaustion is. Is it just nearly of the claim for benefits, or do you also have to, it's the way I read the lower court's decision, Supreme Court decision, which is you have to exhaust your due process claim before the agency as well. They said both things, not just that you have to exhaust trying to get your remedies, but you have to go to the very agency you're accusing of a due process violation to cure it.  Correct. That was the holding as a matter of state law. We argued below that you had to exhaust your claim for benefits, but not the claim that the agency was too slow, but we lost as a matter of state law on that issue. All right. Just so I'm clear in my own mind, I think what Justice Barrett was getting at, and I'm not sure I understand this completely how this would work. Can you go to state court, you can't go to federal court to claim a due process violation until you've denied the process, correct? That's correct. Do you really have a workable alternative to go to federal court as opposed to state court? You have to file with the state to claim the benefits to start with, correct? Correct. And so you have to be there. So how and when can you go to federal court? That's what I don't understand from the other side, but do you understand it? I think you can go to federal court at any time and your claim might lose on the merits if you haven't tried out the process from the state court, but you can still go. It's just the ground for dismissal wouldn't be a lack of exhaustion. It might be a lack of rightness perhaps though? Right. In principle, a federal court could dismiss for lack of rightness, yes, but it just wouldn't be an exhaustion dismissal. So you're really stuck in a state process with a loop that you can't get out of. Our view is that if we went to federal court in this case, the federal court would not dismiss for lack of exhaustion under Patsy and it would entertain our due process claims on the merits. Did you try a futility exception argument? I don't know. I don't think we made that argument below. Do you have any reason to believe that Alabama doesn't recognize a futility exception requirement? Well, I mean, we argued below that it would be absurd. In our brief, we argued it would be absurd. You argue it would be absurd and catch 22 and Heller was trotted out and we hear that from time to time, but that's what a futility exception exists to address and I'm just curious whether you know whether Alabama law permits a futility argument and you're saying, as I understand it, that none was attempted here in any event. So I don't know the answer to the question. Alabama does say this is a jurisdictional limitation, which implies to me that there aren't equitable exceptions like futility, but I'm not sure.  I don't know.  And then if when we're challenging a benefits decision by the federal government, there's almost assuredly going to be an exhaustion requirement, social security, disability benefits or whatever in federal court and I'm just curious what you might say about the incongruity of refusing to allow a state to have a similar exhaustion requirement that the federal government imposes on America's. Well, I don't think it's incongruous at all because I think the practical effect of our rule is that most claims would be dismissed in state court if you're just seeking benefits for lack of merit because you've gotten enough process. In other words, if you just file a claim in the state agency saying, I want benefits and then you get a bad decision from the hearing examiner and you just go straight to federal court and say, well, that was a due process violation. I didn't get a good hearing for the examiner, you would lose in federal court. Federal court would say, there's no due process violation. You have plenty of process. No, I understand that. I think we're speaking past each other. So you're saying that Alabama can't have an exhaustion requirement, correct? Only as applied to section 1983. Right. Yeah. Right. Okay. But if I were to challenge my federal disability benefit claim, identical claim just against a different government here instead of the state, the federal government, you'd almost assuredly have to exhaust your administrative remedies before you could challenge that decision. And I'm just curious how you reconcile that fact with the relief you seek here. So I'm actually not sure that's the case if it's the type of claim we're asserting here. Like suppose you filed a social security claim and it was stuck in the agency for five, 10, 15 years. You'd have a futility argument for sure. Yeah. I think you'd be able to go to federal court. Yeah. Right. But otherwise you'd have to exhaust, right? Right. And that's what I'm getting at.  So in the federal system, you have an exhaustion requirement with a futility exception. Assuming Alabama recognizes a futility exception, and I'll have that question for counsel. I've done a little research on it, seems to have one. Why shouldn't the state be allowed to have the exact parallel situation that you'd have on the federal system? I guess I think that argument is incompatible with the Felder case. I mean, look at all the reasoning of the Felder case. I think it would rebut that suggestion. I mean, the court held that the state is not permitted to put that type of barrier in front of the vindication. What does Felder, because that is the linchpin of your argument is that we've already decided this. So what does, what kind of state procedural rules or rules does Felder still leave? How would you define the scope of that? So Felder left two categories of rules that the state could apply in its own courts. One are neutral procedural rules. So it gave the example of rules governing substitution of parties and service of process. Rules that don't justify to plaintiffs who sue governmental defendants. And then the second category was certain jurisdictional rules. And Hayward elaborated on this. The court said that jurisdictional rules that reflect concerns over competence over the subject matter and the power of the person, that jurisdictional rules are designed to   So, you know, examples of such rules would be like in the Herbie case, a jurisdictional rule that a territory, a city court can only hear cases arising from its territorial limits. The court upheld such a rule. Or a case saying that the state won't exercise jurisdiction over out of state defendants if it's an out of state plaintiff. The court upheld such a rule in the Douglas case from 1929. So those are the types of jurisdictional rules that would. And do you view Felder as a preemption decision then? Yes. I view Felder as a preemption. And what, on what basis was the preemption? So the court talked about purposes and objectives preemption in its opinion. And we actually have no problem with that. We agree with all of its analysis. I actually think there would be, there's a straighter path to the result in Felder. I just think there's a direct conflict. Because when the court holds that an affirmative defense is not available, it just means it's not available regardless of whether the adjudicator is a federal or state judge. So I view sort of direct, I view Felder as a direct conflict preemption case. The court did couch it in purposes and objectives language, possibly because in that case it actually wasn't clear whether it was an exhaustion requirement at all. Unlike typical exhaustion requirements, you don't have to wait for the agency to rule. And so one of Wisconsin's arguments in that case was this isn't exhaustion like in Patsy. I think that's why the court walked through all the reasons that the statute conflicted with, you know, the purpose of Congress. And then it said, well, actually we think it is an exhaustion requirement. And then Patsy's reasoning just follows. What I guess I'm confused about from your answer to Justice Kavanaugh is how the jurisdictional and neutral requirements relate to the analysis in Felder. I mean, Felder's rule about whether or not it was preempted didn't seem to have anything to do with whether the rule was jurisdictional or neutral. So why do you suggest that that's somehow a way to get out of Felder's analysis about preemption? Well, I think so Felder specifically said the rule in that case wasn't neutral. So the court has this whole discussion about how, you know, it only applies to plaintiffs used to the government. And so that's not neutral. Yeah, but that's not what I mean, I'm looking at the analysis in Felder. And as you said, subsequently, it's a direct preemption case. It says that the notice of claim statute undermines the uniquely federal remedy that is Section 1983 in several interrelated ways. And then it talks about three ways, one of which is that it conditions the right of recovery that Congress has authorized. The second is that it discriminates against the federal right. And the third is that it looks like an exhaustion requirement, all right? But really, the reason it's preempted is because it undermines the federal right. And it seems to me that Alabama's law is doing all of those three interrelated things. So I don't understand why we care whether or not it's jurisdictional or whether or not it's neutral in any given sense. It's doing what Felder says you can't do because it undermines the federal right. So I agree the court doesn't have to care about any of that stuff. In fact, there is language in Felder that says that even if a rule is neutral and procedural, it's still, you know, if it undermines the federal right, it's still preempted. And we'd be perfectly fine if the court went in that direction. I don't think it's neutral and procedural, but I'm sorry, Your Honor. But do you contest the principle that state courts are generally completely free to define the jurisdiction of their courts? No, I don't contest the general principle. But there are some exceptions, right? Yes. So why isn't that body of case law, the appropriate body of case law to apply here since the Alabama Supreme Court tells us this rule is jurisdictional? We presumably have to accept that this is a matter of state court jurisdiction. So why don't we look to the body of case law that explains when this general rule that the state courts can define the jurisdiction of their own courts gives way. I know you want to talk about Patsy and Felder, but why is that neither of those involves jurisdiction? That's right. So this court has upheld some jurisdictional rules and struck down others, and we're happy to talk about those cases. So in Howlett and most recently in Haywood, this court held that jurisdictional rules were preempted. And in both those cases, the rule of decision was that the state courts in general hear 1983 claims and the state courts sometimes hear claims against these particular defendants. And so the state cannot avoid preemption just by defining the jurisdiction of the state courts to exclude cases where this defense is asserted. And in fact, in the Howlett case, there's actually this language that says that Felder would not have come out the other way if Wisconsin had said that state courts lack jurisdiction over claims in which the notice of claim requirement wasn't satisfied. Well, in Haywood, the court concluded that the New York rule evinced hostility toward 1983. Can that be said here when the Alabama courts will entertain the 1983 claim? It's just a question of when they will do it. Well, I think that you would—hostility is too strong a word, but I think the state has a policy disagreement with Congress over the merit of hearing unexhausted claims. Respondents' brief emphasizes that Alabama made the policy judgment that exhaustion is a good idea, it really helps the claimant, and that's a policy judgment that is inconsistent with the policy judgment that Congress made when it enacted Section 1983 without an exhaustion requirement. You have a broad argument, Mr. Unikowsky, that if it's an exhaustion requirement, it can't get in the way of a lawsuit. You also have a narrower argument that has to do with this case, but what would be—if you had to define a narrower class of cases that are preempted so that if we wanted to avoid the question of whether all exhaustion requirements were preempted, what would that narrower class of cases look like, and what justifies the parameters? So I think the Court could say that it's not going to rule on whether all exhaustion requirements are preempted, but it's going to say that this particular statute is preempted as applied to all 1983 claims, and that holding would avoid looking at the facts of this particular case. And I think the Court could reach that conclusion by comparing the time limits here to the time limits in Felder. So in Felder, the Court held that the statute undermined Section 1983 because the claimant only had 120 days to bring the suit, and therefore the practical effect of the Notice of Claims statute was to immunize the state against many types of 1983 claims. And so I think, you know, this case, the time limits are actually much shorter. It's seven days from receipt or 15 days from mailing of a decision to file an internal appeal to the Appeals Tribunal. It's also 15 days to go to the Board of Appeals. One of the petitioners in this case alleges that he couldn't appeal because that entire period came and went when he was in the hospital on a ventilator because of COVID. So I think that the Court can hold that this particular statute has the same type of adverse effects on claimants as — So it would be a line about the degree of burden that's attached to the 1983, right? That's right. It could go in that direction, because that was part of Felder's reasoning, and so I think the Court could incorporate that. I mean, it was part of Felder's reasoning. Felder has this — some language that suggests a very broad rule applying to all exhaustion requirements, but then it also goes into the time limits. It has a lot to do with, like, how much burden there is on the 1983, right? And it also discusses the purposes of the statute and whether those purposes suggest a conflict with the policy of 1983. And the relationship between or among all of those things is not particularly clear from the language of the opinion. It sort of suggests that they don't really believe that there's an absolute bar when it comes to exhaustion requirements. Do you agree with that? Do you have any, you know, views about the relationship among those three aspects of the Court's reasoning? Yeah. I'm not sure I agree with that, because I think the reason there were so many different arguments in Felder was that it wasn't really clear that was an exhaustion requirement in the typical way of you file your claim to the agency, you wait for a couple of years, you're trapped in purgatory, and then you leave the agency, right? Because it was just a notice of claim requirement. You just submit your claim, and if you wait a particular period and they haven't answered, you get to sue. And in fact, in the part of the opinion talking about exhaustion and Patsy, the Court says, well, you know, the state says it's de minimis, implying that, you know, maybe some exhaustion requirements fall under Patsy, but this just isn't one. And the Court says, no, no, no, this really looks like an exhaustion requirement. But because of that dispute, I think the Court felt the need to go through, you know, all of the other doctrinal machinery. I think this exhaustion requirement is exactly like the ones in Patsy. It's an absolutely classic exhaustion requirement. You go to the agency, you have to wait for it to rule. As this case illustrates, you might have to wait for several years before getting a chance to go to court. And so I think Patsy's reasoning that this is just not an affirmative defense to a Section 1983 claim carries over to this case. Ms. Yernikowsky, how, you know, we've said in our own context about jurisdiction, it's a term of many, many meetings, too many. How are we supposed to, like, let's say I agree with you that the definition of jurisdiction has to be a federal one. How are we supposed to decide? Because a different test does apply, right, if this is a jurisdictional requirement than if it's just a straight-up, you know, more Felder-like scheme. So what is the test? How do we decide if the state rule is really jurisdictional or not? So the words of this Court's cases, which I'm sure Your Honor knows very well, is that it's really jurisdictional. It reflects concerns over the power over the person or competence over the subject matter that jurisdictional rules are designed to protect. I certainly understand that that formulation will not resolve any or even many cases. But I think that just looking at how the courts in Howlett and Haywood reached their conclusions, so in both cases the Court held that, number one, the state courts have general jurisdiction over 1983 claims. Number two, the state courts in general had authority over these defendants as long as certain other, you know, conditions were satisfied. So for example, in Haywood, the Court emphasizes that you can get injunctive relief against these defendants. And so the Court said, well, if there's power over 1983 claims in general, power over these defendants in general, the rule is not a bona fide jurisdictional rule. I think that's the reasoning in those cases. And again, carried over to this case, I think you'd have the same reasoning. Alabama courts generally have jurisdiction over Section 1983 claims. There's jurisdiction over this defendant as long as the claim is exhausted. There's jurisdiction over unexhausted claims when there is no exhaustion requirement in the particular scheme. All that's happening here is that the state is cutting out from jurisdiction claims in which the defendant has this particular affirmative defense, even though this Court has held that that's not a defense under Section 1983. And so I don't think the Court really has to elaborate the exact lines here. Its lines are a little bit blurry. But I think that, you know, as applied to these particular facts, you can just – But the claims processing rule is a jurisdictional rule. Right. Exactly. So I mean, you know, I think there's going to be a lot of borderline cases, but I don't think this is one. And let me just ask you one question about how this scheme works, because I agree it's very odd. Is there some mechanism when you're before this intermediate tribunal where you actually fill out a piece of paper and say, I'm asserting a due process claim in addition to my claim for benefits? How would one even exhaust the due process portion of this? So I've been wondering that too. I mean, maybe you can just go back right now to the appeals tribunal and like file like a 28-J letter saying, hey, enough time has passed, you know, there's a due process violation. I don't know if there's any procedural mechanism to do that that I'm aware of, but that does seem to be what the state court is requiring here. I came into this case thinking that perhaps there wasn't a great deal at stake since a plaintiff like your plaintiffs could always file in federal court and avoid the exhaustion requirement by doing that. But what you just said in response to Justice Barrett makes me think that this could be much more important, because if we are going to read into the general rule that state courts can define their jurisdiction, what we have done in determining whether federal statutes are jurisdictional, which is pretty much to say, boy, it's really hard for us to conclude that anything is jurisdictional, then you are really asking for a significant weakening of this general rule, which has been a landmark rule for hundreds of years. So I'm not sure the court should engage in the sort of statutory interpretation of state statutes that it would engage in for federal statutes. That's not the rule we're asking for. All right? We're not quarreling with the state court that as a matter of state law, this is a jurisdictional statute, right? But what we're just saying is that not all jurisdictional rules are created alike for purposes of federal law, and that distinction might sort of match the jurisdictional versus claim processing type of distinction that this court has articulated.  And are you saying that assuming this is a state jurisdictional rule, it cannot or can be preempted? What is it? I thought this case was about preemption, not about the characterization of the state law. So if we agree and assume that the state law is jurisdictional, what implication for whether or not it can be preempted by federal law? In this case, I think there's no implications. It's preempted regardless of whether it's jurisdictional. Why? Because this court has held, as far back as like the Mondew case in 1912, that a state court cannot decline jurisdiction over a federal claim because of a disagreement with the federal policy law on the claim to proceed. And I think that's what's happening in this case. Alabama has the view that exhaustion is a good idea, and it has imposed that by statute. But Congress has decided that that's not the case, that you should be able to bring 1983 claims without having to exhaust. And so the rule... And so it's a supremacy clause issue in terms of whether or not that has to be the outcome. Yeah. I think the rule of decision applied by the state court in this case is inconsistent with the rule of decision that Section 1983 requires the state court to adopt. So I think there's just direct preemption in that way. We're not disagreeing with the purpose and objectives analysis in Felder. We agree with that too. But I think there's an even more straightforward way to get to the same outcome. Put aside Felder, what is the problem with just going to federal court? Well, we could have gone to federal court, but there's a lot of cases from this court. I won't mention Felder, but there's a lot of other... What is the real world problem with just going to federal court? Or maybe there aren't any, and you're just saying, perhaps since this, we can go to state court. But do you have any real world problems with just going to federal? I think there's a lot of reasons that you would want to go to state court. So first of all, the Pennhurst Doctrine sometimes prohibits plaintiffs from bringing state law claims in federal court. Federal courts also often have abstention doctrines that prohibit bringing the claim in federal court. There's a brief from two religious freedom organizations that talks about the abstention doctrines in some detail. Also there's practical concerns, like in some cases, lawyers are just being more familiar with the local state court. The vast majority of unemployment insurance litigation in Alabama happens in state court. And so if a lawyer may be more familiar with that tribunal, they may spend their entire career practicing in state court. And if they have a civil rights claim from a claimant, then it makes sense for them to go to state court. And you mentioned this earlier, but a procedural due process claim usually requires that you go through the state processes first. Maybe that's how this case got on the wrong track. Do you agree with that? In general, yes. I think that if you went to federal court and asserted your due process claim without exhausting, you'd usually lose, except in an unusual case like this where you're actually challenging the inability to exhaust. Thank you, counsel. I want to make sure I have your complete answer to the line of questioning I understand Justice Kagan to be pursuing. I mean, and I think why you called this Kafkaesque, which is because you're being told you have to go to the state. Your claim is the state doesn't handle these things in a timely fashion. They lose the papers. You can't answer the phone. So why send them back if you have to go back there? Your whole point is you can't go back there because they do such a that's what you're challenging. And I just want to make sure if you had the most efficient state procedure imaginable, you know, they answer the phone on the first ring and they quickly give you a decision. Would your argument be the same that it doesn't matter? It would be the same. We would definitely lose in that scenario. But it would be the same argument that you wouldn't have to exhaust. So if such a claim is filed... You would lose? In other words... On the merits. On the merits, we would lose. You would not... Then the ruling would be you do have to go to the state before pursuing your 1983 action in the state agency? So we don't think there should ever be an exhaustion requirement. If you file the suit in federal court and said, you know, even though they answer on the first ring, they should have been even faster. There wouldn't be an exhaustion problem. The federal court would just say there's no due process violation. It's a great state agency. It's very effective. And we just want the state court to apply the same rule of decision, right? You don't have to exhaust, but your claim loses because you're getting plenty of process. Okay, but then what was Kafkaesque about the process? I understood you to say that that was the problem, that it imposed a burden on the exercise of your federal right. What Kafkaesque is doing is that we couldn't challenge our inability to exhaust precisely because we haven't exhausted. That was the problem. The problem was we can't exhaust effectively, and the state court held that because you didn't exhaust, you can't challenge that. What if you can exhaust effectively? Well then you wouldn't have a claim. The problem is, as applied to this fact pattern, I think it doesn't make sense to apply an exhaustion requirement. And that's why we think that as applied, effectively, what the statute is doing is granting the state immunity in the state court's process. And my last question is, as applied to this fact pattern, so tell me what the particulars of this fact pattern are that may not be the case in other situations. The particulars of this fact pattern is when the petitioners are challenging their failure to exhaust, and they're told they can't challenge their failure to exhaust until they have, in fact, exhausted. The problem with that is that, as a practical matter, you're immunizing the state in the state court from the 1983 claim because you can't exhaust, so you're incapable of challenging your inability to exhaust because the state is saying you have to exhaust until you can bring the challenge. So there's no way to challenge in state court at all. And so it's a de facto immunity akin to the immunities that were in the Haywood and the Hallett case. So that's our narrowest argument on this. Thank you, Counselor. Justice Thomas? Justice Alito? Could you have sought mandamus in state court to get a ruling in these cases, an administrative ruling in these cases? So there's a dictum that is cited by a respondent from a 1997 intermediate appellate court case that says that, in principle, mandamus could be available if an agency intentionally sits on a claim and drags its feet, but no mandamus claim was asserted there. I think mandamus wouldn't be very effective in this case for a few reasons. So first of all, of course, you have to show a clear and indisputable right to the writ, which is a higher standard than in that ordinary civil case. Also, you wouldn't, the only thing the state court could do is tell the state agency to rule, couldn't enter the other remedies that were sitting in this case. Mandamus is also a discretionary remedy. And so I just don't think it's an effective substitute for the 1983 claims we're asserting today. What if the state has a regime under which the person seeking the benefits first has to file a claim, and then there are two levels of appellate review, administrative review, and after, I assume that you would admit that if the case were filed in federal court, the person would have to seek the benefits in the first instance, right? Yes, they wouldn't have to, it wouldn't be an exhaustion problem under patent. They'd have to seek the benefits, but there's no violation if you haven't tried the benefits. All right. And then the person, then the person says, oh, this process is too long. I want a quick decision. They denied my claim. Then what? So it's a violation of my due process rights because this is more elaborate than it needs to be. So if your claim was denied, you can go to federal courts and you can file your claim and you can say there's a due process violation and the court would adjudicate that. If you jumped the gun and didn't wait for all the process to wrap up, then probably the federal court would say that there's no due process problem. The state's giving you plenty of process and we'd want the state court to reach the same ruling. And if that's not the case, if you were collaterally attacking the state court administrative process and you finished it and there's still due process violation, then maybe you'd win in federal court. And if you'd win in federal court, you should win in state court too. We're just asking to align the rules. Thank you. Counsel, you say this is not a neutral rule because in every other case where there's a due process violation of an agency's process in some way, people can go directly to state court. Correct? That's one reason it's not neutral. And another reason is Felder's reason, which is that it only applies to plaintiffs who sue the government. Plaintiffs who sue the government for this particular type of benefit. So it is so generous to just one class of plaintiffs on one potential constitutional violation. It does apply to state law claims, I acknowledge that, but it's not neutral in the sense that it doesn't apply in private tort litigation, doesn't apply to other lawsuits against the  I guess I'm having trouble with the jurisdictional argument that my colleagues are concerned about. This is not jurisdictional in the sense of we're telling state courts that they can't hear a claim. Correct? I agree with that, Your Honor. All right. We're not saying this is a federal claim, so it has to go to federal court. We're saying, no, you state courts have the power to hear 1983 constitutional claims that your legislature permits you to do. So it's not as if they filed a neutral rule that says you can't hear 1983 claims. Correct? I agree, Your Honor. And so all we're saying is you state courts should decide in the first instance whether there is a due process violation.  That's correct. We're not saying in this court that we necessarily deserve to win. We just want a chance to be heard. Thank you. Justice Kagan? In the colloquy that you had with the Chief Justice, you started with the broad form of your argument and ended up with a narrower form, a much narrower form. In the delta between the two, it seems to me you're going to lose on the merits anyway. In other words, if somebody goes in and says, I got $100, I really deserve $200, they didn't listen to a certain category of evidence, that's a due process violation, you know, you've not made the argument, they're just going to throw you out, whether you call it on the merits or because your claim isn't ripe. So why should we go to the broad form of the argument when nobody's going to win in that category of cases anyhow? I guess I just think that's the cleanest reading of Felder. I mean, Felder has lots of different rationales, and I think all those rationales apply to exhaustion requirements in general, or even more narrowly, all those rationales apply to the statute whenever it's applied. So the court could go narrow. I just don't see a way of distinguishing Felder from any other case in which the exhaustion requirement is invoked. But, you know, if the court rules in our favor narrowly, obviously that's fine from our perspective. Thank you. Justice Gorsuch? This new narrow theory, what exactly does it encompass? What class of cases? So the narrowest argument that I've articulated is when there's a de facto immunity from the application of the rule, then there's a preemption problem. When it's impossible to exhaust, is that another way of saying it? Well, when the very thing you're challenging is your failure to exhaust, then the state can't say you failed to exhaust, because once you've exhausted, then your claim goes away, because you've exhausted, it becomes moot at that point. So essentially, you're immunizing the state from these claims that there's a due process violation in connection with the exhaustion procedure. I'm not sure I've got it, but let me try, that it's impossible to bring your claim. I think applying this rule, it's impossible to challenge the exhaustion requirement in state court. Yes.  And what if it's not impossible here, because of mandamus, because you might have a futility argument? We just don't know. Then what? So I don't think Respondent has argued in favor of the futility argument. Well, I think all of this is kind of new, to be honest with you, this narrow theory. I read your brief as pressing the broad theory, but here we are. Let's say we just don't know whether it is truly impossible here. What do we do then? Well, even if it's not truly... Putting aside your broad theory. No, I understand, Your Honor. Even if it's not truly impossible, I still think that at least it puts a condition, a significant condition in front of the vindication of the claim that's no less significant than the condition in the feather. What if they're the same sorts of conditions that exist in the federal administrative realm when we're dealing with a federal benefit and an agency doesn't rule? I'd make a futility argument and I'd maybe mandamus the agency. I guess I think Section 983 is a special statute. This court held, Captain Patsey, that there's no exhaustion requirement. There's immediate access to a judicial forum. So I just think that's different from the mine run case in which you're challenging a decision from the Social Security Agency. Thank you. Justice Kavanaugh? Justice Barrett? I just want to clarify your answer to Justice Gorsuch. He asked you to stick to the narrow theory, but to answer, you reverted to the broad one, that Patsey just precludes exhaustion requirements generally. If we do not agree with your reading of Patsey, can you articulate, try one more time to articulate that narrow theory that doesn't rely on Patsey? Sure. I would say that there's a significant barrier to the vindication of a claim challenging the inability to exhaust the remedy when the court holds that you have to exhaust the remedy in order to bring that claim. I mean, what we're trying to do is get the state agency to give us hearings and give us adequate notice. And what the state court said is that because you didn't exhaust those remedies precisely because we didn't get the hearing and the notice, you can't bring your claim. So even if Justice Gorsuch is correct that there's some theoretical way with mandamus, which we don't think this is an adequate substitute to bring the claim, I mean, there's still a very significant barrier, which is to the bringing of the claim. So that does place the type of barrier that I think would conflict with Congress's objectives when it enacted Section 1983. Okay. Thanks. Justice Jackson. Thank you, counsel. Mr. LaCour. Mr. Chief Justice, and may it please the court. This court finds historic state powers to be preempted only when the text of federal law makes that result clear. Nothing in 42 U.S.C. Section 1983 makes clear that it was meant to preempt neutral jurisdictional rules like the one at issue here. Petitioner's reliance on PATSY ignores the key difference between exhaustion rules created by Congress and exhaustion doctrines crafted by courts. The former may preempt, but the latter do not. They are judge-made timing rules like ripeness and abstention. They do not add elements to a federal right, but merely determine when a federal court is going to hear it. This court's ripeness and abstention holdings do not apply to state courts, nor does its determination that federal courts generally should not send 1983 plaintiffs to the states. Precedent confirms that 1983 does not contain a categorical no-exhaustion element. In Johnson v. Fankel, the court did not require immediate appellate review of a 1983 defense. In Ohio Civil Rights Commission v. Dayton Christian Schools from 1986, this court applied younger abstention to force a 1983 plaintiff back into state agency proceedings. These decisions show that deferring consideration of a federal right does not necessarily alter or defeat it. Thus, while some notice of claims rules, like the one in Felder, are preempted as obstacles to adjudication and liability, agency review is typically a means of adjudication and does not inherently conflict with 1983's remedial purpose. But even if immediate judicial consideration were an unwritten element of 1983, neutral jurisdictional rules like Alabama's are still a valid excuse for declining jurisdiction. Reading 1983 to preempt such laws would raise serious constitutional questions that are best avoided. I welcome the court's questions. Well, Mr. Unikowski's argument, as I understand it, is that the exhaustion rules in Alabama makes it impossible for him to pursue the due process claims that he has under 1983. So would you respond to that? Yes, Your Honor. Two points. One, as Justice Gorsuch was alluding to, that is a new argument that was not presented to the Alabama Supreme Court. It was not passed upon by the Alabama Supreme Court. It's not in the cert petition. It's not properly before this court. Their only argument is that even the most perfect agency adjudication, if it has an exhaustion rule, is preempted. And we think that, as Justice Kagan was alluding to with Felder, that that rule has already been rejected by this court. But looking at this as-applied challenge to Alabama's law, we don't think that it is the case that it functions as an immunity. Mandamus is still available. There is still the potential for a futility argument, one that was not raised below. And so it's simply not the case that it is impossible to get an adjudication here. I'm not sure how it is possible, given that, as I read the court's decision below, you have to bring the to-do process argument to the agency, and I don't see any procedure to do that within the agency. There's nothing that-there's no mandamus within the agency. I don't know how the mandamus court would have jurisdiction, because it requires exhaustion. So you're in a loop that I'm not sure how this claimant gets out of. Yeah, I don't think mandamus would require exhaustion. The point of mandamus would be to break the sort of logjam that plaintiffs are complaining about here. But they didn't take advantage of mandamus. Alabama ruled very broadly. It didn't say that Mr. Williams, for example, who had a final judgment that he was attacking, had a claim that could be heard in court. And you seem to concede in your briefs that he did. He got his claim thrown out because he didn't file the notice of claim. Then he brought a due process argument saying that the notice he received was inadequate or the time limits were not proper under due process. And the Alabama court dismissed his action as unexhausted. That sounds to me as if the due process claim has to be exhausted within the agency. Your Honor, if he had exhausted it and it was final, he had the ability to file a direct appeal to the circuit court. He did. And the court did what it did, and all of a sudden he goes up to the Alabama Supreme Court and dismisses it as unexhausted. Your Honor, I think it's important to remember how this was actually litigated before the state courts. Their primary argument, if you go back to their briefs before the state courts, was that this exhaustion requirement didn't apply to the procedural challenges whatsoever. There was no 1983 claim. But please just tell me what form, where is it in this process that tells litigants, if we're not acting, you can go to the appeals council and file something and get them to order the agency to do something. And then if the agency doesn't do it, maybe you've exhausted it and you have a futility argument to go see Mandamus or to go do something in state court. This is a Cathy S. type of process that's going on here. Your Honor, I don't think so. Alabama case law makes clear that Mandamus is available and that you may be able to raise a futility argument. It's discretionary, Mandamus, isn't it? Correct. But we presume that state courts are going to follow the federal constitution. We actually don't know how Mandamus operates with respect to the exhaustion requirement. And that just points out the waiver problems that I was addressing earlier. None of this was briefed up below, none of this was argued in the blue brief either. And so what we are dealing with here is this categorical rule. And we don't think that even Patsy supports this categorical rule. General, on that question, you started today but with the text of federal law does not preempt. You know, and that's a fair argument and a good argument. It's just the argument that was in the dissent in Felder. Justice O'Connor made exactly those same points but it was a dissent in Felder and in the majority in Felder it made clear that the exhaustion requirement by Wisconsin's law was problematic. It said it doesn't involve lengthy or expensive administrative proceedings but it forces injured persons to seek satisfaction from those alleged to have caused the injury in the first place, such as dispute resolution system may have much to commend it but that is a judgment the current Congress must make. In other words, the language in Felder does seem, contra Justice O'Connor's dissent, the language in the majority in Felder does seem to suggest that exhaustion requirements generally, and we can talk about how to define those, but generally are preempted even though there's no text. A few things on that point, Your Honor. First is, Felder did not just say Patsy ruled and then in a two-page opinion end the case. There was a detailed, nearly 15-page preemption analysis there and the court made clear there were really two key problems with Wisconsin law. One was that in purpose and effect it minimized liability and so there's your clear conflict. You have a federal law designed to impose liability and a state law designed to minimize it. I think that is the through line from Felder to Howlett to Haywood is those are immunity laws. And second, the court said that the law in Wisconsin frequently and predictably defeated the 1983 claim. Now defeat means that you're going to exercise jurisdiction over it and then dismiss it with prejudice because it is an affirmative defense that the defendants were handed by Wisconsin and that did result in dismissals with prejudice. A jurisdiction, like the law at issue in Alabama, jurisdiction is not an affirmative defense. You would never say that an amount of controversy requirement is an affirmative defense. It doesn't defeat the right. It simply says we're not going to consider it. And so there's no way for Alabama to alter the 1983 right by merely defining jurisdiction over it. Counsel, I appreciate that summary of what Felder said, but in the section on page 141 where it talks about what it means to undermine for preemption purposes, it first of all has three things, not just two, and these three things aren't just minimizing liability and defeating the 1983 claim. It says it conditions the right of recovery that Congress has authorized and does so for a reason manifestly inconsistent with the purposes of the federal statute. So that's one thing. And I appreciate that it coloned to minimize government liability, but the point is that it's inconsistent with the purposes of the federal statute. Second, the notice provision discriminates against the federal right, and it talks about the differences in the time limits in a way that discriminates. And then finally, it operates in part as an exhaustion requirement. Now, I appreciate that your counsel on the other side is just homing in on the exhaustion requirement, but Felder seems to take it even beyond that. So can you explain why Alabama's law is not doing the three things that mattered in Felder to the preemption analysis? Yes. So agency adjudication is not a means of minimizing liability. It is a means of adjudicating whether or not claimants are entitled to money. I think that's far different from the notice of claims requirement in Felder, which had no benefit whatsoever to plaintiffs. Unlike here, the exhaustion requirement in Alabama law can be beneficial to plaintiffs because it keeps their well-heeled employers or the secretary from taking them to court immediately.  But can you talk about the purposes of the federal statute? Right? Because I understood preemption to be about inconsistency with the reasons or the goals the federal statute was there. So isn't a requirement like Alabama's, which prohibits the ability to bring a due process claim under these circumstances, inconsistent with Section 1983, which is supposed to be giving people the ability to make these kinds of claims? Your Honor, we're not prohibiting anyone from bringing them. You get to raise those very claims in front of the agency first, and I think that's a key difference between... But not if the agency won't process your papers. Well, and Your Honor, that's why we have mandamus. That's why the futility arguments are present as well. And then second, there's a key difference between going to an agency for an adjudication and just being forced to go park your claim for 120 days with the police officers who purportedly beat you up. The law issue in Felder, again, that in no way can benefit plaintiffs. But the exhaustion requirement can benefit plaintiffs. And also, my friend is incorrect, the exhaustion requirement does apply to the secretary as it applies to claimants as well. So, your argument at bottom is that this is consistent with Congress' objectives in 1983, because I understood that to be the sort of umbrella consideration with respect to preemption, which is what I thought we were talking about here. Yes, I don't see any conflict with the way Alabama has structured judicial administration and with the purposes of 1983, which are to impose liability. This is not a liability minimizing scheme. It was not designed to do that. It was invented in 1935 to make unemployment benefits available to people. No one would think that... Has anybody ever recovered in 1983 making these kinds of claims in Alabama state court that you're aware of? Your Honor, I'm not aware. I've not seen one cited by my friends and I've not found one myself. But I don't think anyone would say that Social Security Administration is set up as an obstacle to people who are trying to get disability benefits. It is the avenue for getting that. Can I ask about the dimensions of your argument in two different ways? I'll give you just a couple of hypotheticals. So one is, suppose we take this out of the employment context. We're not talking about a benefit of any kind. There's a person who has like a quintessential 1983 claim, which is the improper use of police force. And Alabama sets up a scheme where you have to go to the police department first and you have to go through these three levels of review before you can bring that to court. Is that perfectly okay? Or does that change matters? I think, Your Honor, if we're talking about case by case, then I think it's time to affirm the Alabama Supreme Court's decision because it was just this categorical argument. But second, to get to your question, you need to look to see, does this look like a rule of judicial administration or not? It may be looking a lot more like Felder and thus might be more suspect. I don't understand. What makes it more suspect? Well, it might be what are, who is it that's doing the adjudication? What are the sort of requirements that bind? Yeah, I mean, it's sort of set up the same way, but it's a police board. You know, police officers are on these boards and they make you go through three different stages and we make you do all that for police boards of different levels before you can take the claim to court. Your Honor, again, if it's particularly stringent, you might run into some problems like in the Brown case from 1949. If it looks like it's designed to minimize liability, you might run into some Felder problems. Well, if, if, if. Let's just say it's the same kind of thing, but it's in the police context. It's the same time limits. It's the same everything. There's no piece of paper that says we're doing this to prevent good claims. You know, it's, but, but it's in a, it's in a different context, a non-benefits context, a quintessential 1983 context. The court has said in Howlett and Heywood that neutral rules of judicial administration are a valid excuse for refusing to entertain a federal claim. So if that is a valid and jurisdictional rule that's been set up, then I think that would be okay. Why would that look an awful lot like Heywood itself? A, a, a rule that evinces hostility to the 1983 claim, because there's no tradition of requiring this sort of thing when a plaintiff wants to sue, wants to bring a classic fourth amendment 1983 claim. Well, I think that history could factor in, but at the same time in Heywood, there was no way to get into state court whatsoever. I took it in Justice Kagan's hypothetical that you, you would get to court eventually to raise your claim. And so, and this court has said, I think this court's ruling show that merely deferring consideration of a claim is very different than defeating it. So look at Johnson v. Fenkel, where you had a 1983 defense of qualified immunity that was denied at summary judgment stage in the Idaho trial court. And they wanted to take that up immediately to the Idaho Supreme Court and were not able to do so. And so in 1983, um, did not give them some right of interlocutory appeal. And I think that's essentially what petitioners are asking for here is a right of interlocutory appeal. I don't want to derail, uh, Justice Kagan, I think had a number of hypotheticals, but, uh, so I don't want to interrupt that, but then I, eventually I do want to ask you about Mr. Unikowsky's narrow argument. Did you want to? It doesn't matter which way we do it. I'm not sure I can capture exactly what his narrow argument is, but suppose the narrow argument is that there's no exhaustion requirement, uh, in a 1983 case in state court where it is as a practical matter, impossible or extraordinarily onerous to get a decision. How would the state be hurt by that? What would be wrong with that? I think there might still be some, some sovereignty interest if you're going to be reading the statute to require state courts to exercise jurisdiction that the state has never given them jurisdiction to exercise. And that's why the court has been careful in, even in Haywood to say that these neutral and truly jurisdictional rules are a valid excuse for declining jurisdiction. That's the nature of any jurisdictional rule. That's going to keep some cases out of court. So that can't be the test. Couldn't it be though that in some of those cases at least where it's truly impossible and it really is a catch 22, that that is a vincing hostility to the plaintiff's claims and a Felder argument might be made there.  Or even a Haywood argument. Or even a Haywood argument. We just don't know whether that's the case here. Right. How about if, um, you know, in Felder there is a lot of talk about the time limits. Here the time limits are even more stringent than they were in Felder. Suppose we make them even more stringent still and let's add another bunch of things. Let's say that instead of three levels of review, there are five levels of review. Let's say between each level you have to proceed within five days and then you have to bring your court claim at the very end within five days. Let's say we have empirical evidence that suggests that because the state administrative process is very slow, it takes an average of 10 years to actually get to court. At that point, can we say that this is so onerous a process that it has to be in conflict with 1983? Yara, it sounds like it could fall under Haywood and potentially be in conflict with 1983 under a Haywood theory, even if it is a truly jurisdictional rule that starts to look like an evasion rather than something that's really about the competence of the subject matter. But here, this truly is about competence of the subject matter. You have an expert agency, like since these claims existed for the first time in 1935, they've always been adjudicated in the first instance by these hearing officers. They have expertise when it comes to hearing these types of claims because there are thousands or hundreds of thousands a year. They're applying the statutes and regs again and again. It's the exact sort of situation that this court confronted in Elgin v. Department of Treasury, a Thunder Basin case about the Merit Systems Protection Board, where the court recognized that the MSPB has certain expertise because they hear these personnel claims again. The expertise is in adjudicating the entitlement to unemployment, not the due process claim, right? A similar argument was made in Elgin that the MSPB doesn't typically hear constitutional claims. And what the court recognized was, well, no, they are going to hear some similar types of claims that are going to come up again and again in this context. For example, it's not fair because I didn't get my notice in time, therefore, excuse my lack of filing an appeal. And then that can be considered by the Board of Appeals, the Appeals Tribunal, or the Circuit Court eventually. So tell me, and this is just a clarifying question I was trying to ask Mr. Unikowski, how does one assert these due process claims, say, before the intermediate tribunal? Is there a mechanism for doing that? It just seems like everything that was a description in the briefs was talking about how to pursue getting your unemployment benefit. How does one go about making this due process argument before the agency? You know, my understanding is it's a fairly informal process. I think it would be as simple as arguing that this is not fair because the notice was ineffective, for example. But, again, ultimately, that issue was not thoroughly briefed because that wasn't the argument they were pressing before the state Supreme Court. You're making your position seem benign, but we have amicus briefs from a wide variety of groups, from ACLU and public citizen to religious liberty groups to the Chamber of Commerce, all of which say that your rule will really hinder federal civil rights claims from getting into state court. The religious liberty plaintiffs say that your position would grind religious litigants into submission before they are able to have their claims heard in court. We see the same thing from the ACLU's brief. Do you want to respond to that? Yeah, no, I think this court's precedents in cases like Felder and Heywood help to guard against that. Plus, if... But don't they guard against it by saying that exhaustion is not a requirement before you bring a 1983 suit in state court? No, Felder, again, did not deal with an agency adjudication. It dealt with a law that said park your claim here for four months, and then if you don't do that, you have an affirmative defense you're going to be facing, and you're going to lose, which I think is far different. But every... Just to pause there, your answer suggests that I'm misreading Felder. Every state Supreme Court that has considered the issue, I think, before the Alabama Supreme Court has read it just the way I just said. You're right. I think South Dakota was on our side, and then in some of those cases, you're dealing with... The vast majority of state Supreme Courts... We're definitely on the short side of the split, but we understand... And the short side of the split is because those state Supreme Courts, almost uniformly, have read Felder to mean you can't have exhaustion requirements, very simple rule, can't have exhaustion requirements for 1983 in federal or state court. And you have a good argument to the contrary. The problem is it's in the O'Connor dissent, not in the majority in Felder. Your Honor, again, I think you have to read those statements from Felder in their context. I mean, of course, opinions are not statutes, but if they were, I'd invoke the presumption against superfluity. There's a lot more in Felder to suggest that what was really the problem was that it was trying to minimize liability. And there, the conflict couldn't be clearer with 1983. But I cannot find in the text or in Patsy this categorical no exhaustion rule. And I don't see how you square that with cases like Ohio Civil Rights Commission, which I mean, I apologize it's not in the briefs, but it's a 1986 decision where this court applied younger abstention to a 1983 claim to force that claimant back into a state agency for seating. Dayton Christian Schools had fired a teacher on religious grounds, sort of a precursor to Hosanna Tabor. The teacher went to the Civil Rights Commission, said this was based on sex, and the commission opened an investigation. That 1983 claim went to federal court and said, we have a free exercise right to be free from these state proceedings altogether. And in an opinion by then Justice Rehnquist, the court said, no, take it up in the state agency, which again shows that deferring consideration does not defeat. And it also suggests that my friend's position would lead to very strange outcomes where a federal court in Ohio did not have to hear that particular 1983 claim. But a state court would have to? That just simply doesn't add up. And I think that gets to the point. You add just one more. You've invoked federalism and respect for states, but I think the practical effect of your rule, if we were to adopt it, would be everyone or most people would go more quickly to federal court and haul the state before federal court. I'm just, the irony of that, can you comment on that? I don't think so, Your Honor. I don't think there's an incentive for states to structure their courts in a way that's necessarily going to send everything to federal court. If they do, then so be it. But at the same time, that might be an incentive. Well, these kinds of claims, if you had problems, you know, a free exercise problem, a religion problem or a procedural due process problem with the unemployment scheme in Alabama, you're just going to go to federal court. Right. And as Mr. Yudkowsky acknowledged, you'll lose on the merits. So I don't think that's going to be a serious problem here for Alabama. That's the point of suppressing the federal right in state court, isn't it? If you make the hoops so difficult to go through, then they have no remedy. Here Mr. Williams was thrown out of out of the state process because he didn't receive notice because he was unconscious because of COVID and he's had no remedy in their state court. So basically, what you're really saying is, no, we're not hostile to a federal right because we know we're going to win no matter what we do. Your Honor, I think and one last question. Tell me where in your regulations there is a process set out that that claimants can go through to speed up the process. All of them have told me that they've appealed on time. They've called a hundred, not all of them, but we have 21 plaintiffs here. Many of them filed their appeal notices, letter after letter, phone call after phone call, years and years that passed before they received anything or when they received something with no explanation. So tell me where in your regulations you tell claimants what they can do before the agency if there's a due process violation. Your Honor, I don't have chapter and verse for you because again... You can provide a letter. I don't want to hear about Mandamus. I want to hear where in the regulations these people didn't do what the regulations said they could have done. Your Honor, Mandamus is not something they're required to do, but it is something that is available. And it's their discretionary, correct? Counsel? Yes, Your Honor. But it is one way to avoid due process problems. Go ahead.  Can I just get you to focus in quickly on Felder? And you said many times that you see that case as the problem being about minimizing liability. But I'm quoting from the case when it says that this is, quote, essentially, the question is essentially one of preemption. Is the application of the state's law to Section 1983 actions brought in state courts consistent with the goals of the federal civil rights laws? Or does the enforcement of such a requirement instead stand as an obstacle to the accomplishment and execution of the full purposes of the objectives of Congress? I thought we were thinking about is it an obstacle? Is it consistent? And what I'm worried about is that if we start moving away from that conception of what it means to be preempted, that same kind of thought process and doctrine is used in other laws, not just 1983. For example, we have the Federal Arbitration Act, which has a preemption standard that is almost identical to what Felder just said about whether or not it's consistent. And we've repeatedly said that state laws that do things like, you know, related to contracts, et cetera, et cetera, are preempted by the FAA for the very same reasons. So can you help us not to be concerned about shifting the standard of what it means to preempt and the way in which that might actually implicate other preemption doctrines in other laws? So, Yara, I think the real concern would be adopting the view of preemption from my friend, which doesn't really seem to line up with the more disciplined and text-based approach that this Court traditionally takes. No. Let's say we reject saying there's something about Felder that is focused on exhaustion. I'm looking at Felder as a preemption case that has a standard that talks about the inconsistency with the purposes of the federal statute. Is it an obstacle to the accomplishment and execution? And I've got to tell you, in the Concepcion case, in AT&T v. Mobility, that exact same concept is governing what the Court is doing with respect to preemption. So if we move from that, if we're focused more on minimizing liability or whatever else you say you think Felder means, I'm worried that that's going to bleed over into these other kinds of preemption areas. Yara, what I'd say to that is, why was the law an obstacle? And the text answers that question. State officials shall be liable. What's the state law do? Minimizes liability. So there is your text-based preemption problem right there on the face of the statute. It's not in the text of the statute. Minimizing liability is not in... Correct. But the law at issue there was part of a broader liability scheme. The Felder Court recognized this. That was enacted after Wisconsin had done away with judicial immunity. The Wisconsin Supreme Court had done away with judicial immunity. And so this new immunity statute was enacted that had damages caps and also had this notice of claims requirement. And Wisconsin extolled this as a way to minimize liability. So there wasn't really a question as to what the law was doing. But... The plaintiffs here could have brought suit immediately in federal court. Is that right? Yes, Your Honor. So, I mean, this is Felder's... It seems to me there's a lot going on in Felder. But one, it's most essential holding is it quotes Patsy. And it says, you know, Patsy said, too bad about an exhaustion requirement. You have to be able to bring suit in federal court immediately. And then, and this is on page 147, it says, should there be any different rule with respect to state courts? And it says, given the evil at which the federal civil rights legislation was aimed, there's simply no reason to suppose that Congress meant to have that kind of distinction. So I mean, that seems just like a very clear cut understanding of Felder. Your Honor, even if I grant you that, this is still a jurisdictional rule. And you've still said in Howlett and Haywood that neutral jurisdictional rules are a valid excuse to keeping federal claims out. So even if there is some get-to-court-immediately element of 1983, our courts do not exercise jurisdiction over that type of claim.  Thank you, counsel. Justice Thomas, any further? Justice Sotomayor? Your friend on the other side said if it went to federal court, there might be a rightness issue and an abstention issue. What are your thoughts? I think that is... That's likely true. We've seen that in a lot of courts of appeals decisions. We cited Condie Jackson's 2011 circuit decision where they lost on the merits for not taking advantage of the process and running to federal court too soon. And I take your point that, as I understand it, your argument is it's hard for this to be an exhaustion requirement of administrative agency processes to be an obstacle that's improper given that the federal government has similar administrative exhaustion requirements. But there does seem to be a tremendous record of difficulty of individuals accessing that administrative process here. What assurance do you have, or can you give us, that the state is addressing these claims in a proper and timely manner? Yes, Your Honor. Two points. The reason we point to the federal analog is to show that this really does concern competence over the subject matter like the court has discussed in Howlett and Haywood. And then as to assurances that the state is taking this seriously, this is obviously outside of the record because of the motion to dismiss stage. But we have tripled the number of hearing officers. We have from eight to 25, and we have greatly reduced the backlog. I think in January of 2022, that backlog of people who had waited at least 21 days for a hearing was up to over 131,000. Today it's down to about 7,410, and we anticipate clearing that backlog by the end of the year. Was some of that backlog due to COVID or other? Absolutely, Your Honor. I think a million additional unemployment claims. And then, of course, when you have COVID, it makes it harder to hire people and makes it harder to retain people too during the height of the pandemic. Thank you. Mrs. Kavanaugh? Justice Barrett? I asked Mr. Unikowski about the state statute of limitations, so I'm going to ask you the same question. When does the state statute of limitations start running on these claims? And to clarify, my concern is if somehow the state statute of limitations is running, you know, because the due process violation has already begun in the agency, is it the case that that statute of limitations might run in state for purposes of the state court before they can even get there? Your Honor, of course, this hasn't been briefed. I don't think that would be an issue because, I mean, the due process violation isn't complete until the process has run out. So I think, and certainly if they were to appeal out of the agency proceeding directly to the circuit court, there wouldn't be any statute of limitations problem in that situation either. Okay. My other question is, so a couple of times in your brief, you called the agency proceeding a proper proceeding for redress under 1983, and you said there's no reason for this court to distinguish between bringing a 1983 claim and something that's called a court versus sending it to an agency. Is that somehow different than the exhaustion requirement? Can you just? Your Honor, our point there is that we think the language suggests that there is a great deal of discretion for the states in terms of structuring their adjudicatory processes. And in this instance, we have the agency first functioning sort of as an adjunct. They compile a useful record that can then go up for the circuit court to review with de novo review. And that's particularly helpful for uncounseled claimants who maybe don't have a lot of means because they just lost their job. They can go through this informal process, have a record. They don't have to go through formal discovery and have a lawyer to have that record when they do get to the circuit court. So the argument, I mean, I guess I'm trying to distinguish between an exhaustion requirement, which is almost kind of like a pregame thing. You know, it's a threshold. And this makes it sound like if you're saying this is part of the 1983 claim itself or part of the adjudication, it's actually not a delay of the 1983 claim, but is your argument instead that this is actually part of adjudicating the constitutional violation? Your Honor, we do think it's advancing the purposes of 1983, which are remedial and ensuring that federal rights are not being violated. But it's not a 1983 claim inside of the agency.  I just wanted to make sure I understood your argument. Thank you. Justice Jackson? Thank you, counsel.  Rebuttal? Mr. Unikowski? Thank you, Your Honor. I just wanted to clarify one answer I gave to Justice Gorsuch about ripeness. I did acknowledge that ripeness is, in general, a defense that a federal court can vindicate in a Section 1983 case. I wasn't trying to suggest that in this particular case, if we went to federal court, there would be a ripeness defense. I think we've waited long enough, and our claim is ripe. So it's more a general point about federal court's powers to dismiss cases. I'd like to say a couple of words about the Felder case. There's a lot of discussion this morning about whether or not exhaustion was an independent holding or whether the decision was partly based on exhaustion, partly on other considerations. Even if the latter formulation is correct, I actually think that every single consideration in Felder also applies to this case. It's true that Felder talked about whether the state was trying to minimize liability. My colleagues said that the agency system in general wasn't trying to minimize liability. I don't think that's the question. I think the question is whether the exhaustion requirement in particular is trying to minimize liability. And I think the answer has to be yes. The sole function of the exhaustion requirement is to cause claims to be dismissed when they're brought in circuit court. And because the time limits are so tight, claims are going to be predictably dismissed a lot more frequently than the notice of claim requirement at issue in Wisconsin in the Felder case. And so ultimately, I think every single consideration in Felder really applies with equal force to this case. So the court doesn't need to parse out which aspects of the holding we're holding and which are alternative holdings, which were dicta, because I think the entire decision applies to this fact pattern. On the question of jurisdictional rules, I think the court would really have to overrule a lot of cases dating back to 1912 to vindicate the argument that this is a jurisdictional argument that can survive preemption. I think it's notable that the amicus brief by several states actually does advocate overruling all these cases back to 1912. Respondent doesn't ask for that. And I think if the court keeps those cases, then the result in this case follows. As far back as 1912, the court said that the state court cannot decline jurisdiction based on disagreement with the policy judgment of Congress that a defense is unavailable. And that's simply the principle we're asking to carry forward today. Finally, on this as applied challenge, I just wanted to point out that in the proceedings immediately after asserting our argument based on Patsy, we said it would be absurd to make us wait for years in the administrative process and then bring our claims, which I think is reasonably construed as the same type of as applied argument we're making this morning. And we did make this argument in the blue brief as well as the yellow brief. So I do think it's teed up for the court's consideration. If there's no further questions, we'd ask the court to reverse. Thank you, counsel. The case is submitted.